## UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: <br> SALVATORE CARBONE <br><br>    DEBTOR | : CHAPTER 7 <br> : <br> : CASE NO. 18-13403-elf <br> : <br> : |
| GARY SEITZ, ESQUIRE <br> CHAPTER 7 TRUSTEE <br>    PLAINTIFF <br><br>        v. <br> SALVATORE CARBONE, WENDY <br> CARBONE, RAYMOND CARBONE, <br> CATHY BIRD SIKORA , <br> CARBONE BROTHERS, L.P. <br> BUILDER PROS CONSTRUCTION LLC: <br> BUILDERS PRO CONTRACTORS, LLC: <br>    DEFENDANTS | : <br> : <br> : <br> : ADVERSARY NO. <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## **COMPLAINT**

Plaintiff, Gary Seitz, Esquire, the Chapter 7 Trustee, by and through his undersigned special counsel, files the within Complaint against the defendants named herein, and avers as follows:

### **JURISDICTION AND VENUE**

1. The Bankruptcy Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334.

2. This Adversary Proceeding is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper pursuant to 28 U.S.C. § 1409(a).

## THE BANKRUPTCY

4. On May 22, 2018 (the "Petition Date"), Salvatore Carbone (the "Debtor" or "Sal Carbone") filed a voluntary petition under chapter 7 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").

5. On May 22, 2018, Gary Seitz was appointed Chapter 7 Trustee [Docket No. 4].

## BACKGROUND

6. Sal Carbone was a partner in an entity known as Carbone Brothers, L.P. ("Carbone Brothers")

7. Upon information and belief, Carbone Brothers was a Pennsylvania Limited Partnership, with an address at 368 Old Morris Road, Harleysville, Pennsylvania, 19438.

8. Sal Carbone lives at 368 Old Morris Road, Harleysville, Pennsylvania, 19438.

9. Carbone Brothers was in the business of providing construction and general-contracting services.

10. The other partners in Carbone Brothers were Raymond Carbone ("Ray") and Bruno Carbone ("Bruno"). There was no partnership agreement.

11. Upon information and belief, Sal Carbone was the managing partner of Carbone Brothers at all times relevant to this Complaint.

## THE MONTGOMERY COUNTY JUDGMENT

12. John Antonucci ("Antonucci") was solicited by the Carbones to participate in a real-estate-investments deal with the Carbones and Stolfi (since this is the first time mentioning him, you should state his full name and then define him as Stolfi), related to certain real property located at 628 Cressman Road, Harleysville, PA 19438 (the "Harleysville Property").

13. Antonucci provided the sole source of funding, $246,500, for the deal in return for an agreement to repay Antonucci the $246,500, plus interest at a rate of prime plus ½%, and one-fifth of any profits earned from the sale of the Harleysville Property.

14. The money was put into a Harleysville Savings Bank account titled in the names of Salvatore Carbone and Raymond Carbone.

15. The Harleysville Property was sold for $295,395.04.

16. At or about the time of the settlement of the sale of the Harleysville Property, Raymond and Salvatore propositioned Antonucci to enter into a similar deal related to three real-property deals in Delaware (collectively, the "Delaware Properties"): one related to a property known as "Oak Orchard" (the "Oak Orchard Property"); and two related to two vacant lots in Lewes Delaware (the "Lewes Properties").

17. Antonucci agreed to roll the $246,500 Loan over so that the Carbones and Stolfi could utilize the Loan in relation to the Delaware Properties.

18. The parties agreed to enter into a partnership with the Carbones and Stolfi related to the Delaware Properties, whereby each person would invest their profits from the sale of the Harleysville Property, and each person would be an equal partner, and would share equally in the profits and/or losses related to the Delaware Properties, except that, in any event, the Carbones and Stolfi would repay the $246,500.00 Loan to Antonucci, plus interest at a rate of prime plus ½% (the "Delaware Partnership Agreement").

19. Ultimately the Carbones and Stolfi constructed and sold the Oak Orchard and Lewes Properties, but failed and/or refused to repay Antonucci anything despite evidence of substantial profits from the sales of these properties.

20. Further, even though they represented that there was no money left to repay Antonucci, the Carbones and Stolfi purchased boats, pools, trucks, and other luxury items at or about the same time.

21. On July 21, 2009, Antonucci commenced an action against Carbone Brothers, the Carbones and Stolfi in Montgomery County at docket 2009-22589 for, *inter alia*, breach of contract.

22. On or about February 23, 2017, the Hon. Maurino Rossanese entered an arbitration award in the amount of $456,860.52 against Carbone Brothers, Sal Carbone, Ray, Bruno and Stolfi. The award was confirmed by Order of the Court of Common Pleas on October 2, 2017. See **Exhibit "A"**

23. When Antonucci attempted to collect on his judgment and contempt motions were pending in the Court, the Carbones and Stolfi each filed Chapter 7 Petitions in this Court.

### **CARBONE BROTHERS**

24. Carbone Brothers operated from the house of Sal Carbone.[1]

25. Sal Carbone handled the books and records for Carbone Brothers, including managing all the paperwork for the business.[2]

26. Upon information and belief, no formalities were ever observed for this partnership, and no records were kept of any meetings between the partners.

27. The last tax return produced by Carbone Brothers in 2010 showed equipment worth $236,853. No accounting has been made for that equipment.

28. Sal Carbone claimed on his Chapter 7 schedules that Carbone Brothers ceased to exist in 2009. However, Ray's schedules state that Carbone Brothers ceased to exist in 2014, and

---

[1] Transcript 9/23/2013 pg. 14
[2] Transcript 9/23/2013 pg. 12

Bruno claimed that Carbone Brothers ceased in 2011. See excerpts of these Chapter 7 schedules attached as **Exhibit "B".**

29. Despite claiming that Carbone Brothers was out of business in 2009, Ray filed pleadings in the Court of Common Pleas of Montgomery County on behalf of Carbone Brothers in a matter known as York v. Rudakevich, CCP Montco. 2015-31922 ("York Complaint"). On December 28, 2016, Ray averred that the contracting in the York matter was performed by Carbone Brothers, and never claimed that Carbone Brothers was out of existence.

30. During the 341 Meeting of Creditors, Sal Carbone testified that Ray was using the truck and plow that was associated with the Carbone Brothers' plowing business. Sal Carbone permitted the transfer of the vehicle and plowing business to Ray for little or no value, which has not been recovered for the benefit of the creditors.

31. Sal Carbone did not receive any value in exchange for the transfer.

32. Carbone Brothers paid Wendy's personal expenses such as travel, entertainment, and utilities. See **Exhibit "C"**

33. As of April 23, 2016, the Pennsylvania Attorney General's website listed an active contractors license for Carbone Brothers.

34. However, upon information and belief, Sal Carbone is continuing the operations of Carbone Brothers through entities known as "BUILDER PROS CONSTRUCTION LLC", "BUILDER PROS CONTRACTORS LLC" and/or "BUILDER PROS MANAGEMENT LLC" ("Builder Pros Entities"). These entities have the same registered address as Carbone Brothers.

35. The foregoing operations of these businesses commenced before Sal Carbone's bankruptcy filing and when the Montgomery County action was pending.

36. At the 341 Meeting of Creditors, Sal Carbone testified that his wife, Wendy Carbone ("Wendy") was operating the Builder Pros Entities. Upon information and belief, Wendy has no knowledge of the construction business and is merely a "figurehead" to make it appear that Sal Carbone is not involved in the business operations.

37. Upon information and belief, Wendy is receiving business income from the Builder Pros Entities that is intended for Sal Carbone.

## THE SELLERSVILLE PROPERTY

38. Notwithstanding the fact that Sal Carbone listed on his Chapter 7 schedules and testified that Carbone Brothers ceased to exist in 2009, in 2014 Ray filed a Construction Permit Application on behalf of Carbone Brothers to construct a single family residence at 260 Elmhurst Avenue, Sellersville, Pennsylvania ("Sellersville Property"). See **Exhibit "D"**.

39. Upon information and belief, Carbone Brothers, Ray and/or Sal Carbone fronted the $45,000 for the purchase of the building lot and had the deed put in the name of Cathy Bird Sikora ("Sikora").

40. Upon information and belief, Sikora is in a relationship with Ray.

41. At all times, Sellersville Borough referred to the Sellersville Property as the "Carbone Brothers Property". Attached hereto as **Exhibit "E"** is a deed description prepared by Sellersville Borough for the lot consolidation of the Sellersville Property

42. Carbone Brothers' engineers, Borusiewicz, submitted plans to Sellersville Borough for the construction of the Sellersville Property. The plans were prepared for the "Carbone Brothers Property". See **Exhibit "F".**

43. Further, it is apparent that Carbone Brothers was still operating in 2014 at its registered address of 368 Old Morris Road

44. Mail to the Sellersville Property is being sent to 45 W. Mt. Kirk Avenue, Norristown ("Mt. Kirk Property"). Upon information and belief, Carbone Brothers built the Mt. Kirk Property, similar to the Sellersville Property, and transferred this property to Sikora for little or no value. See **Exhibit "G"**

45. Neither Carbone Brothers nor Sal Carbone receives any value in exchange for these transfers.

## CARBONE REALTY, INC.

46. Sal Carbone's Chapter 7 schedules show that Sal Carbone is a partner or shareholder in Carbone Realty, Inc. ("Carbone Realty").

47. Carbone Realty's currently registered address is 128 Barbara Drive, Yardley, PA 19067, which was a house owned at least at one time by Sal Carbone's sister, Sophia Freeman.

48. Sal Carbone is listed as the President of Carbone Realty.

49. Carbone Realty purportedly owns property in Montrose County that may have valuable gas rights attached.

50. Despite repeated requests from Plaintiff to produce an appraisal for the Montrose Property and tax returns for Carbone Realty, nothing was produced.

51. During the course of this proceeding, the Plaintiff may learn through discovery or otherwise of additional transfers made by any of the defendants. The Plaintiff's intention is to avoid and recover all such transfers. The Plaintiff reserves the right to amend this Complaint to include later identified transfers.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 548(A)(1)(A) AND 550(A)**

52. The Plaintiff incorporates the above paragraphs of this Complaint as though set forth fully herein.

53. The transfers of the Carbone Brothers' plowing business, equipment, the Sellersville Property and the Mt. Kirk Property constitute "transfers" within the meaning of Bankruptcy Code section 101(54).

54. Each Transfer is a transfer of an interest of the Debtor in property.

55. The last Transfer was made on or within two (2) years before the Petition Date.

56. The Transfers were made on or within two (2) years before the Petition Date

57. Each Transfer was made with the actual intent to hinder, delay, or defraud one or more entities to which the Debtor was or became, on or after the date that such Transfer was made, indebted.

58. Pursuant to Section 548(a)(1)(A) of the Bankruptcy Code, the Plaintiff is entitled to avoid the Transfers.

59. Pursuant to Section 550(a) of the Bankruptcy Code, the Plaintiff is entitled to recover the Transfers avoided for the benefit of the Bankruptcy Estate.

WHEREFORE, the Plaintiff, Gary Seitz, Esquire, respectfully requests that this Honorable Court:

A. Enter judgment in favor of the Plaintiff and against all Defendants in an amount not less than the aggregate amount of the Transfers, plus costs, interest, and attorney's fees as allowed by law;

B. Awarding an attachment against the assets fraudulently transferred and/or the property of the transferees

C. Grant such other and further relief as this Court may deem just and proper

### COUNT II
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO THE PENNSYLVANIA UNIFORM FRAUDULENT TRANSFER ACT, 12 PA. C.S.A. §§5104(A)(1), (A)(2)

60. The Plaintiff incorporates the above paragraphs of this Complaint as though set forth fully herein.

61. At the time that Carbone Brothers and Sal Carbone's interests in the plowing business, equipment, the Sellersville Property and Mt. Kirk Property transferred, the Court had established the trial date in the Montgomery County Action.

62. The Plaintiff in the Montgomery County Action stated counts against Sal Carbone, Ray, Bruno, Stolfi and Carbone Brothers.

63. Knowing that their assets were at-risk, the defendants placed the plowing business, equipment, the Sellersville Property and Mt. Kirk Property out of reach of Antonucci and other creditors *vis-a-vis* the Transfers.

67. The Transfers are a transfer of interesst by the Debtor in property.

68. Sal Carbone received either nominal or no value in return for the Transfers.

68. This Complaint is filed within four (4) years after the Transfers were made.

69. The Transfers were made with the actual intent to hinder, delay, or defraud one or more of the creditors within the meaning of §5104(a)(1) of the Pennsylvania Uniform Fraudulent Transfer Act ("UFTA").

70. UFTA, 12 Pa. C.S.A §5104(b), has identified eleven badges of fraud in determining actual intent. Defendants violated §§5104(b)(1),(4),(5),(7),(10).

71. As a direct and proximate result of the Defendants' conduct, present and/or future creditors suffered damages.

72. Such creditors could obtain a judgment for the value of the Transfers against the Defendants as set forth in Section 5108(b) of the UFTA.

73. Pursuant to Section 544 of the Bankruptcy Code, the Plaintiff is entitled to avoid the Transfers.

74. The Defendants were the initial transferees of each Transfer.

75. Pursuant to Section 550(a) of the Bankruptcy Code, the Plaintiff is entitled to recover the Transfers avoided for the benefit of the Bankruptcy Estate.

WHEREFORE, the Plaintiff, Gary Seitz, Esquire, respectfully requests that this Honorable Court:

A. Enter judgment in favor of the Plaintiff and against all Defendants in an amount not less than the aggregate amount of the Transfers, plus costs, interest, and attorney's fees as allowed by law;

B. Awarding an attachment against the assets fraudulently transferred and/or the property of the transferees

C. Grant such other and further relief as this Court may deem just and proper

## COUNT III
### PIERCING THE CORPORATE VEIL/TRANSFEREE LIABILITY AS AGAINST ALL CORPORATE DEFENDANTS

76. The Plaintiff incorporates the above paragraphs of this Complaint as though set forth fully herein.

77. Sal Carbone is continuing the operations of Carbone Brothers under the guise of the Builder Pros Entities. These entities have the same registered address as Carbone Brothers.

78. The Builder Pros Entities are all the alter egos of each other, and as such each is liable for the debts incurred by each.

79. The Builder Pros Entities are controlled by Sal Carbone.

80. The Builder Pros Entities are substantially identical and each should be considered the alter ego of the others and/or such entities should be considered to be one enterprise.

81. Upon information and belief, the Builder Pros Entities are each the alter ego of the other because, among other things:

   a. The Builder Pros Entities share the same management;
   b. The Builder Pros Entities share a similar and/or supplementary business purpose;
   c. The Builder Pros Entities share the same office and/or other equipment;
   d. The Builder Pros act as a similar operation, sharing an office space, employees, and customer accounts
   e. The Builders Pros Entities share the same ownership.

82. At all times relevant and material hereto, Sal Carbone was the dominant and controlling shareholder of the Builder Pros Entities.

83. Upon information and belief, at the direction and control of their dominant and controlling shareholder, Sal Carbone, the Builder Pros Entities failed to adhere to corporate formalities including the regularly scheduling of shareholder and corporate officer meetings.

84. At all times relevant and material hereto, upon information and belief, the Builder Pros Entities failed to maintain corporate records.

85. At all times relevant and material hereto, the Builder Pros Entities were and are severely undercapitalized.

86. At all times and relevant and material hereto, upon information and belief, the defendant, Sal Carbone, as the dominant and controlling shareholder of the Builder Pros Entities directed and caused the intermingling of the corporate funds and affairs with the personal funds and affairs of Sal Carbone to the extent that the Builder Pros Entities are a sham and mere facade for the operations and personal interests of their dominant and controlling shareholder, Sal Carbone.

87. Moreover, it is believed that the Builder Pros Entities are merely a continuation of Carbone Brothers.

88. This Court should disregard the corporate form of the Builder Pros Entities.

WHEREFORE, Plaintiff demands that this Honorable Court pierce the corporate veil of Builder Pros Construction, LLC, Builder Pros Contractors LLC and Builder Pros Management LLC., disregarding their corporate identity to extend liability directly to Defendant, Salvatore Carbone and enter judgment against Salvatore Carbone and Wendy Carbone for the value of all transfers identified in this Complaint, plus incidental damages, including but not limited to, attorneys fees together with pre and post judgment interest, costs and any other relief that this Court deems just and equitable.

|  | Respectfully submitted: |
|---|---|
|  | *Robert J. Birch* |
| Dated: March 29, 2019 | _____ |
|  | Robert J. Birch, Esquire |
|  | Attorney for Plaintiff, Gary Seitz, Esquire |
|  | Chapter 7 Trustee |